**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

**SHENZHEN ANT HI-TECH,**
**INDUSTRIAL CO. LTD.,**

**Plaintiff,**

**v.**

**MEDICAL IMAGING SOLUTIONS**
**INTERNATIONAL COMPANY**

**Defendant.**

**Civil Action: 1:15cv1085**

**Judge: LMB/MSN**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

COMES NOW, Defendant, Medical Imaging Solutions International Company ("MISI"), in support of its Motion to Dismiss and pursuant to Federal Rule of Civil Procedure 12(b)(2), (3), and (6), and Local Rule 7(F), files this Memorandum of Law in Support of its Motion to Dismiss.

## I. Factual and Procedural Summary.

MISI was formed in Michigan on or around April 5, 2011. It has been operated out of Michigan, with Michigan headquarters and a Michigan registered agent. Sometime in 2012, MISI entered negotiations with Mr. Wang, the representative of the Plaintiff ANT, a manufacturing company based in Shenzhen, China. MISI and Mr. Wang reached an understanding, and the Parties signed a Sales Operations Agreement (the "Agreement") on or around May 5, 2012, with an effective date of January 1, 2012. The Agreement was signed in China during MISI's trip to tour Plaintiff's manufacturing facilities. Under the Agreement, MISI would be the exclusive United States distributor for ANT syringes and would place irrevocable

volume orders with ANT, which ANT would then ship to the US from China using either ocean or air shipping methods. Following discussions at the end of 2013 and beginning of 2014, the Parties agreed that MISI would order high volume shipments from ANT, but would make delayed payments that coincided with the actual sale of the syringes in the US market, to allow MISI to use actual cash flow to make payments.[1] In December 2014, despite the Parties' agreement and the ensuing course of payment, Mr. Wang, on behalf of ANT, made a sudden demand for payment for all shipments. In order to keep the exclusive US sales relationship and hopefully extend the Sales Operations Agreement for the two years that remained on the option, MISI responded by paying $1,500,000 on or around December 23, 2014, out of money designated for other business purposes. The same day, ANT terminated the Agreement and refused to ship any more of the products already ordered by MISI. On August 13, 2015, ANT made an additional demand for payment. On August 25, 2015, Plaintiff filed a Complaint in this action. Defendant was served through its registered agent on August 31, 2015. Defendant files this Motion in response.

## II. Standard of Review.

When considering a pre-trial Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. Pro 12(b)(2), the Plaintiff bears the burden of proving a prima facie case of personal jurisdiction against the Defendant. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). The Plaintiff is entitled to have all reasonable inferences drawn in its favor, based on its pleadings, but the court may consider other evidence, such as affidavits. *Id.* at 62, *citing Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

---

[1] During or around the same time, and as part of these negotiations and agreements, Mr. Wang signed a Stock Purchase Agreement and became a 30% part owner in MISI.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In deciding a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). To survive a motion to dismiss, however, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *quoting*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether a complaint has facial plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679; *citing* Fed. R. Proc. 8(a)(2).

When a Defendant challenges venue as improper under Rule 12(b)(3), "the plaintiff bears the burden of establishing that venue is proper." *Bartholomew v. Va. Chiropractors Ass'n, Inc*., 612 F.2d 812, 816 (4th Cir. 1979). Without an evidentiary hearing, the plaintiff must prove a prima facie case, although the court is not required to accept the "pleadings as true, as would be required under a Rule 12(b)(6) analysis," and may consider outside evidence. *Douglas v. D.B. Virginia, LLC*, 2010 U.S. Dist. LEXIS 139363, *7 (E.D. Va. Dec. 13, 2010), *quoting Western Refining Yorktown, Inc. v. BP Corp. N. Am., Inc*., 618 F. Supp. 2d 513, 516 (E.D. Va. 2009).

If this Court finds that venue is not proper in the Eastern District of Virginia, this Court may either dismiss the Complaint outright or transfer the action to a district where it otherwise could have been brought, if to do so would be in the interest of justice. 28 U.S.C. § 1406(a) (2006). If this Court finds that the Plaintiff's attorney could have reasonably foreseen that this Court was the improper forum, it is not an abuse of discretion for this Court to deny transfer of

venue and dismiss the case. *Nichols v. G. D. Searle & Co.*, 991 F.2d 1195, 1201–02 (4th Cir. Md. 1993).

## III. Argument.

Under Federal Rule of Civil Procedure 12(b)(2), (3), and (6), the Complaint should be dismissed against the Defendant for the following reasons.

### a. The Complaint Should Be Dismissed for Lack of Personal Jurisdiction Under Fed. R. Civ. Pro. 12(b)(2).

This Court can only exercise personal jurisdiction over the Defendant if the exercise of jurisdiction satisfies constitutional due process and if the Virginia long-arm statute provides for jurisdiction. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982). For purposes of due process, a non-resident's contacts with Virginia must be such that they "purposefully availed" themselves of the privileges of Virginia, such that they are on reasonable notice that their actions may subject them to litigation there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Assuming that personal jurisdiction meets these tests, a nonresident Defendant—such as MISI—may be subject either to general jurisdiction, or specific jurisdiction that is based on conduct connected to the lawsuit. *Altimari v. Bev. Mktg. United States, Inc.*, 2008 U.S. Dist. LEXIS 109984, *4–*7 (E.D. Va. Nov. 21, 2008).

Plaintiff has alleged the following facts regarding MISI's connection to Virginia:

- MISI marketed and sold ANT Syringes to Virginia residents and hospitals;
- MISI's principals invited and hosted ANT ownership in Dulles, Virginia in 2012, during which time MISI described its strategy for distributing ANT's products and met with potential customers of the products, the purpose being to generate additional ANT imports and additional investment; and
- MISI has regularly communicated with ANT's representatives based in Virginia.

*See* Compl. at ¶ 4. Plaintiff's sparse allegations establish nothing more than a tenuous connection to Virginia. For the reasons below, they do not establish such continuous and pervasive activity that MISI could be subject to general jurisdiction in this Court, or sufficient contacts that are specific to the facts of the Complaint.

**i. This Court Lacks General Jurisdiction over Defendant MISI.**

This Court does not have general jurisdiction over MISI because MISI's contacts with Virginia are nowhere near substantial, continuous, or systematic enough to put MISI on reasonable notice that it would be subject to Virginia's courts for any kind of lawsuit. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Single acts or isolated acts cannot establish general jurisdiction. *International Shoe Co. v. Wash.*, 326 U.S. 310, 317 (1945). Even "continuous activity of some sort[]" is insufficient. *Id.* at 318. Only a "continuous corporate operation" in the forum state can establish the general jurisdiction needed. *Id*. The precedent of this Circuit cannot support a finding that the narrow alleged activity of the Defendant meets this standard.

For example, the Fourth Circuit Court of Appeals, applying the rule originally established in *Helicopteros*, refused to find general jurisdiction against a nonresident who had far more pervasive contacts with the forum state (Maryland, in that case) than MISI does here. In *Nichols v. G. D. Searle & Co.*, Defendant Searle had over 20 representatives working in Maryland; employed two managers who supervised them; owned automobiles, samples, and promotional materials in Maryland; had a one-time contract with a Maryland firm; had held two regional and national meetings for managers in Maryland; and made nearly 1% of its total purchases in Maryland. 991 F.2d 1195, 1199–1200 (4th Cir. Md. 1993). The court held that advertising and solicitation activities, by themselves, were not enough for general jurisdiction, and added that

even Searle's Maryland contract and its hosted meetings were not enough to create the "continuous corporate operation" needed for general jurisdiction. *Id.* The court added that the amount of sales activity did not help the equation; it was in fact "too insignificant to be considered." *Id.*, *citing Helicopteros,* (466 U.S. at 418) (holding that even a *large* percentage of a corporation's purchases in the forum state is insufficient to justify general jurisdiction).

In this case, the Plaintiff is even further away from establishing general jurisdiction than was the Plaintiff in *Searle*. Unlike Searle, during the entire course of business between MISI and ANT, MISI hosted only *one* meeting in Virginia, and it was not with any Virginia clients or potential clients or any MISI employees or agents stationed in Virginia.[2] In fact, it was not a meeting with *any* Virginia resident. Instead, the meeting was for the purpose of meeting with Danish distributors and conducting a general review of business between ANT and MISI. The only potential client visit was with a *Maryland* hospital. *See attached Exhibit A: Affidavit of Doug Holloway on behalf of MISI ("Affidavit").*

Moreover, the meeting was not for the purpose of negotiating terms for consummating a contract. The meeting took place six (6) months *after* the Parties had executed the Sales Operations Agreement. The meeting was not even for performance of a contract in Virginia; the Parties were meeting with *Danish* distributors for purposes of solidifying ANT's business in the European market. The reason the meeting was hosted in Dulles was partly for the Plaintiff's convenience and the convenience of the Danish distributors, since there were direct flights in between Dulles and China and Denmark. *Exhibit A: Affidavit.*

---

[2] Notably, also unlike in the case of *Searle*, MISI had no employed representatives in Virginia and owned no property in Virginia. *Exhibit A: Affidavit.*

MISI's marketing and sales in Virginia likewise cannot establish general jurisdiction. Even employing a sales force to solicit business in the forum state—**which MISI does not—** cannot subject a nonresident to general jurisdiction. *Searle*, 991 F.2d at 1199–1200, *citing Ratliff v. Cooper Laboratories, Inc*., 444 F.2d 745, 748 (4th Cir.). The fact that MISI has recently marketed and obtained a few Virginia customers and makes sales to them is not enough to subject it to general jurisdiction. *See Ratliff*, 444 F.2d at 748 (holding that "when . . . defendant's only activities consist of advertising and employing salesmen to solicit orders . . . fairness will not permit a state to assume [general] jurisdiction.").

This is especially true given the small percentage of MISI's overall business in Virginia. MISI did not begin business with Virginia clients until 2014—almost two years after the date of the Sales Operations Agreement. When it did begin to invoice Virginia clients, MISI's 2014 sales in Virginia comprised a shockingly low 0.11% of its gross, US sales revenue. *Exhibit A: Affidavit.* A similar amount of forum-based sales was also insufficient to establish general jurisdiction in *Searle*, even though the corporation owned property and stationed employees in the forum state. Under the same reasoning, MISI's negligible business with Virginia clients is even more insufficient to establish general jurisdiction when MISI has not contracted with any Virginia entity, owns no property in Virginia, and has no stationed employees in Virginia.

**ii. This Court Lacks Specific Jurisdiction over Defendant MISI.**

Similarly, the Plaintiff's allegations are insufficient to establish that this Court has jurisdiction over MISI for the subject-matter of the Complaint. Using Virginia's long-arm statute,[3] the Court must analyze (a) whether the claims *arise out* of the Defendant's activities

[3] Although the Virginia long-arm statute, which is the source of specific jurisdiction, has been interpreted to extend only so far as permitted by the "minimum contacts" test of constitutional due process, hence making the two analyses somewhat intertwined, a specific provision of the

directed at the forum; (b) the extent to which the Defendant *purposefully* availed itself of the privilege of acting in the forum; and (c) whether personal jurisdiction would be constitutionally reasonable. *Mitrano v. Hawes*, 377 F.3d 402, 406–07 (4th Cir. 2004). Plaintiff fails to meet this test under at least the first two analyses.

Since Plaintiff is suing Defendant for breach of the January 1, 2012, Sales Agreement between MISI and ANT, MISI's contacts with Virginia *must* be the source of that breach. *Hartford Cas. Ins. Co. v. JR Mktg., LLC*, 511 F. Supp. 2d 644, 648 (E.D. Va. 2007). The facts as alleged in the Complaint, or testified to in the Affidavit, show that they are not. In fact, they are not even related. Even assuming as true all of Plaintiff's alleged contacts between MISI and Virginia—even if those contacts were *purposefully* directed at Virginia to take advantage of re-selling product there—none of those contacts are the source of MISI's alleged failure to pay ANT for whole-sale orders of product from China.

In order for specific contacts to give rise to jurisdiction, there must be purposefulness and a foreseeability of court action to ensure that "a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Hartford*, 511 F. Supp. 2d at 648–49 (internal citations omitted). Plaintiff confuses the type of foreseeability that would constitute a purposeful availment of Virginia's forum. Even if Plaintiff's allegations of MISI's "business" activity in Virginia show that MISI should have foreseen being haled into court on *those* business actions, which it does not, it clearly does not show that MISI should have foreseen

---

long-arm statute must still be pled since its provisions are not meaningless in this Circuit. *See New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294–95 n.6 (4th Cir. 2005). Although the Plaintiff has not specifically referenced the Virginia long-arm statute, presumably the Plaintiff's reference to the "privileges of conducting business in Virginia," Compl. at ¶ 4, is intended to be a claim of personal jurisdiction based on "[t]ransacting any business in this Commonwealth." Va. Code § 8.01-328.1(A)(1).

being haled into Virginia court on the business activity with ANT under the January 1, 2012 Agreement.

Specific jurisdiction is not concerned with generic foreseeability.[4] For example, in *Hartford*, this Court declined personal jurisdiction over an insured who lived in California. The insurer, Hartford, was suing their insured in Virginia, seeking a determination of rights under the insurance policy as related to a *separate* Virginia lawsuit filed against the insured and being defended by Hartford. Hartford argued that because the policy provided coverage across the entire United States, Hartford's suit against the insured in Virginia was foreseeable, thereby giving rise to specific jurisdiction. This Court disagreed. The policy was delivered to the insured in California, not Virginia, and the subject-matter of Hartford's lawsuit was *only* the rights of the insured under the policy, *not* the separate Virginia lawsuit filed against the insured by a third party. This Court reasoned:

> *While the insureds might have foreseen business litigation in Virginia at the time they purchased the CGL Policy, they could not reasonably anticipate being haled into court there to determine their rights under an insurance policy delivered to them in California.*

*Hartford*, 511 F. Supp. 2d at 650 (internal citations omitted) (emphasis added).

Similarly, even if MISI's sales to its few Virginia clients could have put them on notice of a potential lawsuit related to *those* sales, it could not have put them on notice of a lawsuit for failure to pay under a Sales Operation Agreement for shipments of product from China. **The contract under which Plaintiff is suing in the case *sub judice* was signed in Shenzhen, China, at least 6 months before the Virginia meeting it hosted in October 2012, and almost**

[4] *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.").

**two and a half years before MISI invoiced any Virginia companies for sale of ANT syringes.** *Exhibit A: Affidavit.* Plaintiff has alleged nothing to show that the Agreement was purposefully directed at Virginia. Plaintiff has not even alleged that, under the Sales Operations Agreement, any ANT product was shipped to MISI in Virginia or that payment, by MISI to ANT, was made in Virginia.

Even assuming that the October 2012 meeting was for the purposes of discussing performance under the Agreement, Plaintiff makes no allegation that the reason the meeting was held in Virginia was anything other than "random, fortuitous, or attenuated." *Hartford*, 511 F. Supp. 2d at 648–49. There is no allegation that Virginia clients were involved in the meeting; that MISI and ANT met with Virginia clients during that meeting; that any discussion of Virginia-based sales or other activity was part of the meeting; or that ANT's delivery of the product to MISI under their already-signed agreement was to be performed in Virginia. The one potential client that MISI and ANT met during that time was located in Maryland, not in Virginia, and the only other non-Party meetings were with non-Virginia residents, including the Danish distributors for purposes of selling in the European market. *Exhibit A: Affidavit.*

The fact that the meeting took place in Virginia was also partly to accommodate Danish representatives of a company "Neovitalis," who could conveniently depart from Washington-Dulles International Airport to their home in Denmark. *Exhibit A: Affidavit.* As part of its role under the Sales Operations Agreement, MISI acted as a sales agent to ANT in certain foreign markets. Consequently, MISI had established a Syringe Supply Contract with Neovitalis and the October 2012 meeting was designed to introduce the players and establish a mutually-beneficial, long-term business relationship between ANT, Neovitalis, and MISI that would be performed

almost entirely in Denmark. No part of that relationship was to be performed in Virginia or using Virginia contacts. *Exhibit A: Affidavit*.

Without allegation or proof that the negotiation, signing, performance, or breach of the contract on which Plaintiff is suing occurred in Virginia, all of MISI's connections to Virginia remain random, fortuitous, and attenuated for purposes of specific jurisdiction in this case. *Contrast Viers v. Mounts*, 466 F. Supp. 187, 188–92 (W.D. Va. 1979) (declining personal jurisdiction when "[t]he contract upon which this suit is brought was executed in Kentucky; performance of the contract took place in Kentucky; the contract was allegedly breached in Kentucky; and the work performed under the contract is located in Kentucky."), *with English Boiler & Tube, Inc. v. GLEX, Inc*., 2012 U.S. Dist. LEXIS 81505, *14–*16 (E.D. Va. June 12, 2012) (imposing personal jurisdiction when, among other contacts, "[Defendant] initiated negotiations by calling [Plaintiff's] offices in Virginia . . . The parties executed their contract in Virginia and [Plaintiff] performed the contract in Virginia, utilizing Virginia labor and facilities for more than four months.").

MISI's alleged contact with an ANT representative in Virginia does not change this analysis. All that Plaintiff has alleged is that "MISI has regularly communicated with ANT's representatives based in Virginia." Compl. at ¶ 4. There is absolutely no alleged connection between this communication and the breached Sales Operations Agreement. When communication with a representative is considered significant by courts in finding personal jurisdiction, that individual is a representative of a *resident entity* of the forum state. For example, in *Hirschkop & Grad, P.C. v. Robinson*, the Fourth Circuit affirmed personal jurisdiction when the non-resident defendant made contact with a Virginia law firm, met them in Virginia, settled disputes with the Virginia law firm over the phone, and corresponded with the

Virginia law firm. 757 F.2d 1499, 1503 (4th Cir. 1985). ANT is not a Virginia corporation. *See* Compl. at ¶ 1. It is a Chinese manufacturer, based in China. Moreover, the only contact that MISI has had with any alleged "ANT representative in Virginia" has been with Molly Chen, a translator. ANT has never held out Ms. Chen to MISI as an authorized representative, employee, or agent. MISI was put in touch with Ms. Chen through Mr. Wang in 2013, and was told by Ms. Chen that she was helping Mr. Wang with translation as a favor to him, since her father, Mr. Chen, was in business with Mr. Wang in another company. The only time that MISI has become aware of Ms. Chen serving ANT in any other capacity was when they learned, in March 2015, *after* ANT terminated the Sales Operations Agreement, that Ms. Chen was an employee of ANT-Med, a Virginia registered corporation with tenuous and uncertain connections to the Plaintiff, a Chinese corporation. *Exhibit A: Affidavit.*

All of MISI's interactions with Ms. Chen have been as an individual providing translation services for Mr. Wang. Most of MISI's interactions with Ms. Chen have been through the internet, or via phone calls; MISI has never met with Ms. Chen in Virginia. *Exhibit A: Affidavit.* In fact, MISI's only in-person meetings with Ms. Chen have been in New York and Michigan. The fact that Ms. Chen resided in Virginia is at most random and at the very least inconsequential. MISI cannot be said to have purposefully availed itself of Virginia's forum by being directed by ANT to use the services of a translator who happens to live in Virginia, as Plaintiff argues. To adopt Plaintiff's reasoning would require finding that if Ms. Chen had resided in Canada or Mexico, MISI should have anticipated being sued there simply because a translator lived there and joined conference calls from those locations. Such a ruling would severely undermine the foreseeability and purposeful availment that are essential to establishing personal jurisdiction.

For all these reasons, Plaintiff has failed to allege facts sufficient to subject MISI either to general or specific personal jurisdiction. MISI has nothing even approaching a "continuous corporate operation" in Virginia and has very few ties with Virginia, conducting less than 1% of their business with Virginia clients. More importantly, none of MISI's alleged contact with Virginia has been related to the formation, performance, or breach of the January 1, 2012 Agreement that is the subject of this Complaint. Virginia's connection to this lawsuit is incredibly attenuated and, at least for ANT, merely fortuitous. Such a connection cannot and does not create personal jurisdiction over MISI, though it does begin to highlight that the real reason for ANT to bring a Complaint in this Court appears to be to avail itself of the "rocket docket" and put additional pressure on a Michigan company with no agents based in Virginia.

    **b. The Complaint Should Be Dismissed for Failure to State a Claim for Breach of Contract Against MISI, Under Fed. R. Civ. Pro. 12(b)(6).**

The facts alleged by Plaintiff in its Complaint, even if true, fail to state a claim against MISI for breach of contract. Plaintiff has alleged a breach of the Sales Operations Agreement. Under this Agreement, Plaintiff alleged that payment by MISI for ocean container shipments ordered from ANT was to be made "in full within seventy-five (75) days of shipment." Compl. at ¶ 9. Presumably the Complaint is relying on the following requirement for "Payment Term" in the Agreement:

> *Payment Term: In 2012, for ocean container shipments MISI shall pay invoice in full within seventy five days from date of shipment. For air shipments MISI shall pay Invoice in full within 30 days from date of shipment.* ***Future payment term after this period shall be discussed and agreed.***

Compl. Ex. 1 at 3 (emphasis added). Clearly, there is no payment schedule enumerated for years after 2012. Although the Plaintiff alleges that MISI "fell behind" on its payments in 2014, it has not alleged any "discuss[ion] and agree[ment]," under the terms of the contract, as to the

payment schedule for 2014. Without such an allegation, Plaintiff has not made out a claim for breach of Contract.

Under Virginia law, a breach of contract claim must include: "(1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) resulting injury or harm to the plaintiff." *Parris v. PNC Mortg.*, 2014 U.S. Dist. LEXIS 104270, *13 (E.D. Va. July 7, 2014) (internal citations omitted). Without alleging an enforceable, agreed-upon payment schedule, Plaintiff has failed to allege the first two elements. They have not alleged a legally enforceable obligation of MISI to pay 2014 ocean shipment payments within a certain time (because the facts, if the truth was alleged, will show that no breach occurred since payments were to be delayed to match cash flow from actual US sales). Consequently, they also have not alleged that MISI *breached* any obligation to pay 2014 ocean shipment payments within a certain time frame, nor could they.

Because Plaintiff has failed to plead the necessary elements to prove a cause for breach of contract, the Complaint should be dismissed, as a matter of law, under Fed. R. Civ. Pro. 12(b)(6).

**c. The Complaint Should Be Dismissed for Improper Venue Under Fed. R. Civ. Pro. 12(b)(3).**

Plaintiff has alleged that venue is proper under 28 U.S.C. § 1391(b) and (c) because the Defendant is subject to personal jurisdiction here.[5] Compl. at ¶ 5. The Defendant does not

[5] *See* 28 USCS § 1391 ("(b) Venue in general. A civil action may be brought in--(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. (c) Residency. For all venue purposes-- . . . (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question

reside in Virginia. Defendant is a Michigan company, formed on April 5, 2011. MISI's registered office is located at 44982 Governor Bradford Street, Plymouth, MI 48170. According to MISI's website, their corporate office is located at 550 Forest Avenue Suite 16-3 Plymouth, MI 48170. *Exhibit A: Affidavit*. Moreover, Defendant is not subject to this Court's personal jurisdiction, either generally, or for the subject-matter of this Complaint. *See supra*, Section III.a. Not only does MISI not employ any contractors or employees in Virginia, as discussed above, most of MISI's primary employees are based out of Michigan. For example, Ryan Stonier, who functions as MISI's Chief Financial Officer, resides and works in Michigan. Laura Miner, MISI's customer support representative, also resides and works in Michigan. Most significantly, Doug Holloway, MISI's President and CEO and MISI's registered agent, resides and works in Michigan. Even MISI's outside contractors, such as their bookkeeper (Twina Swale) and Certified Public Accountant (Gordon Leff), reside and work in Michigan. *Exhibit A: Affidavit.* None of these types of roles are filled by Virginia employees or Virginia firms. Moreover, these individuals, as well as almost all other potential witnesses, would have to travel long distances to participate in this case if it were tried in this District.

Plaintiff has failed to carry their burden of showing that Defendant is subject to personal jurisdiction in this District such that it may be a "resident" here for purposes of venue. Plaintiff's attorney could have reasonably foreseen that this District was an improper forum for this case in light of the facts. Thus, Venue is improper and this case should be dismissed.

## IV. Conclusion.

Plaintiff has made a weak attempt to take advantage of this Court's reputation for quickly processing cases, perhaps in the hopes that MISI's connections with Virginia, as well as its

---

and, if a plaintiff, only in the judicial district in which it maintains its principal place of business; . . ."

Agreement with ANT, would not be closely examined. When pressed, however, MISI's connections with Virginia are simply fortuitous for ANT. At most, MISI interacted with Virginia as a convenient travel destination and as the incidental home base of a translator used by ANT. MISI has not conducted any continuous business activity in Virginia; only *one tenth of one percent* (roughly 0.11%) of their entire business, since their date of inception, has been to Virginia clients. The contacts they have had with Virginia have been extremely minimal and have not given rise to the alleged breach of contract at issue here, which was signed in China.

WHEREFORE, the Defendant, respectfully requests that the Complaint be dismissed with prejudice, and that this Court award Defendant its costs and any other relief that this Court deems just and proper.

Respectfully submitted,

Medical Imaging Solutions International Company

By /s/ H. Robert Showers
H. Robert Showers, Esq. (VSB No. 34799)
Daniel J. Hebda, Esq. (VSB No. 82209)
Simms Showers, LLP
305 Harrison St. SE, 3rd Floor
Leesburg, VA 20175
Telephone: 703-771-4671
Facsimile: 703-771-4681
djh@simmsshowerslaw.com
hrs@simmsshowerslaw.com
*Counsel for Defendant, MISI*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2015, I electronically filed the foregoing with the Clerk using the CM/ECF system which will send notification of such filing to the following:

J. Chapman Petersen, Esq.
Nathan D. Baney, Esq.
Surovell Isaacs Peterson & Levy PLC
4010 University Drive, 2nd Floor
Fairfax, VA 22030
703-251-5400 (Phone)
703-591-9285 (Fax)
nbaney@siplfirm.com
jpetersen@siplfirm.com
*Counsel for the Plaintiff*

/s/
Daniel J. Hebda, Esq.